No. 3192

Second Circuit

---

MORGAN PLAN COMPANY, INC., v. ATES, ET AL.

---

(June 28, 1928.   Opinion and Decree.)
(July 14, 1928.   Rehearing Refused.)

---

(*Syllabus by the Editor*)

1. Louisiana   Digest—Exemptions   from Seizure—Par. 2, 11.

A general waiver of a common laborer of the exemption from seizure of his future, unearned wages is void under Code of Practice, Article 644, as amended by Act 184 of 1918.

Appeal from the City Court of the City of Alexandria.  Hon. J. B. Nachman, Judge.

Action by Morgan Plan Company, Inc., against W. C. Ates, et als.

There was judgment for defendants and plaintiff appealed.

Judgment affirmed.

F. B. Cappel, of Alexandria, attorney for plaintiff, appellant.

B. T. Dawkins, W. C. Roberts, of Alexandria, attorneys for defendants, appellees.

ODOM, J.  On August 30, 1926, W. C. Ates and others signed a promissory note in favor of the plaintiff, which note contains the following general waiver:

"Each of us, whether Principal, Surety, Guarantor, Endorser or otherwise party hereto, hereby severally waive and renounce, each for himself and family, all homestead or exemption rights and especially waive in favor of any holder of this note any and all personal exemptions accorded under the laws of Louisiana or any other state of the United States, as against the seizure, attachment or garnishment of any wages or salary that may be due any one of us by any person, firm or corporation, either of us may have under or by virtue of the Constitution or laws of this State, or any other state of the United States, as against this debt, or renewal thereof, and each further waive demand, protest and non-payment."

On August 26, 1927, the plaintiff obtained judgment against Ates, et al., for the full amount due under the note.

Ates is a common laborer for the Missouri Pacific Railroad Company.

At some time after plaintiff obtained the judgment, it seized, through garnishment process, the sum of $98.70 in the hands of Ates employer, said amount being due him as wages.  He moved that the seizure be dissolved on the ground that under Article 644 of the Code of Practice his wages were exempt from seizure.  But plaintiff interposed the plea that he had waived his exemption in the note which he signed.  Ates now claims that the waiver was void, being prohibited by law and against public policy.

The only question therefore presented for our consideration and decision, is whether a common laboror can validly waive the exemption from seizure of unearned wages.

Counsel for the plaintiff company says in brief:

"Counsel for defendant contend that such a waiver is against public policy, and relies on the Act No. 79, page 123, of 1876.  This act of 1876 exempts the wages of labbrers, and especially precludes the laborer or party entitled to the exemption from renouncing or waiving it.

"Such may be the law of 1876 up to the time of the passage of the Act No. 184, page 347, of 1918, and this article enumerates in detail the different matters that are exempt, including laborers' wages; but this Act No. 184 of 1918 does not preclude in any (manner) the renunciation or waiving of this personal exemption.  Said Act of 1918 specially repeals all other prior acts on this question.  The act of 1876 provided a penalty as against such waiver.  Act 184 of 1918 not only provided no penalty, but no prohibition or inhibition was provided in said act.  Therefore Act 79 of 1878 was repealed by that of 1918 on the same subject matter, and the present contract falls under the law of 1918."

Counsel's point might be well taken, but for one thing.  He has entirely overlooked the fact that the portion of Act 79 of 1876 which he says—

"* * * especially precludes the laborer or party entitled to the exemption from renouncing or waiving it"
was not repealed by Act 184 of 1918.

Act 79 of 1876 is

"An act to amend article six hundred forty-four of the Code of Practice * * * to fix penalties for the violation of this act, and to fix the limits of this act and the interpretation to be given it."

The act is written in four sections which are embraced in the title.

Section 1 amends Article 644 of the Code of Practice, which specifically provides that a laborer's wages shall be exempt from seizure.

Section 2 provides—

"That any person offending against the provisions of this Act, or who shall by any artifice or subterfuge induce or procure another to sign away, by contract or otherwise, any of the rights which he or she may have under this Act, shall be deemed guilty of a misdemeanor, etc."

Section 3 repeals all laws conflicting with or contrary to its provisions; and section 4 states the interpretation to be given the act.

It is conceded that the purpose of section 2 of this act was to make it unlawful for a laborer to waive the exemption accorded him under the act.

The title of Act 184 of 1918 is

"An act to amend and re-enact section one (1) of Act No. 79 of the General Assembly of the State of Louisiana of 1876, entitled," etc.    (The title of Act 79 of 1876 is quoted literally.)
"Section 1.   Be it enacted by the General Assembly of the State of Louisiana, That section one (1) of Act 79 of 1876 be amended and re-enacted so as to read as follows:
"Section 1.   That article six hundred forty-four of the Code of Practice of Louisiana be so amended as to read as follows:"

Then follows the article in full, which provides, as did the old article, that a laborer's wages are exempt from seizure.

Section 2 of the act repeals all laws contrary to or conflicting with the provisions of the act.

It is perfectly clear that the act of 1918 did not repeal or in any wise affect sections 2 and 3 of the act of 1876, and that they are now in full force and effect.

Therefore, according to counsel's own ar-gument, it is now unlawful for a laborer to waive the exemption.

It cannot be questioned, we think, that the legislature of 1876 intended to make it unlawful for any one to waive the exemptions provided in Article 644 of the Code of Practice.   It is equally clear that the legislature of 1918 intended to leave untouched that provision of the act of 1876 which made such waiver unlawful.

What may have been the reasons which prompted our legislature to make such waivers unlawful need not be discussed. Suffice it to say that they are unlawful by legislative enactment, and we think it reasonable to assume that our legislature was prompted by the same reasons which underlie the decisions of courts of last resort in many of the states of the Union declaring such waivers unlawful, and that is that they are against public policy.

In a very recent case, that of J. N. Weaver vs. Clyde Lynch, 79 Colo. 537, 246 Pac. 789 (also reported in 47 A. L. R. 299), the Supreme Court of Colorado held that—

"A stipulation in a note waiving the right of exemption is void as against public policy."

Following this case, as reported in 47 A. L. R. 299, there is a note in which the annotator states—

"It is a general rule that a personal exemption cannot be waived by stipulation in an executory contract, such as a note, bond, lease or the like,"

and in support of the rule there are cited cases from fourteen states of the Union.

We quote the following from Ruling Case Law, volume 11, page 543:

"The better reasoning and weight of authority support the proposition that a contract made at the time of incurring an in-

debtedness waiving the debtor's right to exemptions is contrary to public policy and invalid. The statutes which allow a debtor, being a householder and having a family for which he provides, to retain, as against the legal remedies of his creditors, certain articles of prime necessity, to a limited amount, are based upon views of policy and humanity, which would be frustrated if an agreement waiving his right could be sustained. If effect should be given to such agreements it is likely they would be generally inserted in obligations for small demands, and in that way the policy of the law would be completely overthrown. Because of a disposition on the part of some to take undue advantage of another's extremity and because also of the readiness of men, under pressure, to make contracts which may deprive them and their families of articles indispensable to their comfort the legislature has most wisely interposed."

And the following from Corpus Juris, volume 25, page 11, section 192:

"It is a rule nearly universal, based on reasons of public policy, that a debtor's waiver of his exemption right by stipulation of an executory contract, is absolutely void."

And, again—

"The rule in nearly all jurisdictions, whether under a statute so providing, in express terms, or in the absence of statutory provisions, is that an exemption in wages cannot be waived in an executory contract."

In Hardin vs. Wolff & Cref, 29 La. Ann. 333, our court held, with Judge Egan as its organ, that rights acquired under the homestead laws of the state could not be waived by any convention of parties.

The law at that time granted to the head of a family the right to claim his homestead as against certain creditors and exempted it from seizure, but there was no specific provision by which he could waive the exemption.

However, the decision in the Hardin vs. Wolff case, supra, was overruled in Nugent vs. Carruth, 32 Ann. 445, with Justice White as the organ of the court.

But it is interesting to note that Justice White, in his opinion (in which he paid high tribute to the "judgment and ripe scholarship" of Justice Egan) noted and drew a distinction between a general renunciation and a special renunciation as to particular property.

Speaking of these decisions which were cited by Judge Egan in the Hardin vs. Wolff case, supra, Justice White said:

"Without reviewing them in detail, we think they all either depend on the particular provisions of the statute law which they interpret, or if they formulate a doctrine, simply teach that a general renunciation of the right to claim the benefit of homestead or exemption laws cannot be enforced. Upon even this proposition there is division of authority; taking it however as sound doctrine, it does not meet the instant issue, which is not whether a general renunciation of the right to claim the benefit of homestead or exemption laws is binding, but whether a special renunciation as to particular property can be enforced. The difference between the two cases is self evident; the one being a divestiture on the part of the debtor of his right to claim the benefits of the laws of the land as to his present and future property, the other being simply the exercise of his power of ownership over the particular property the subject of a particular contract. In fact we think a careful scrutiny of the cases in the books will make it clear that the fundamental distinction is carefully observed between the right of an individual when not inhibited by positive law to do as he pleases with his own, and his want of power to make, as to all future property, a law of his own different from and in violation of general laws applicable to all others."

From the above we think it highly probable that if the court had been consider-

ing a case in which the debtor had made a general instead of a special waiver, it would have been held that such waiver was void, even as to the homestead.

In the case at bar, Ates made a general waiver, in a note, of the exemption from seizure of his future, unearned wages. We hold that such waiver was void, and in so holding affirm the judgment of the lower court. Costs to be paid by the appellant.